**SO ORDERED.**

**SIGNED this 11 day of March, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. |
| CENTER 130, LLC, | 10-00198-8-JRL |
| DEBTOR. | Chapter 11 |

**ORDER**

This case is before the court on the motion of First Citizens Bank and Trust Company ("First Citizens") for relief from the automatic stay. On February 25 and March 1, 2010, this matter was heard in Raleigh, North Carolina.

**BACKGROUND**

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 11, 2010, and continues to operate as debtor-in-possession. On February 17, 2005, the debtor executed a promissory note in the original principal amount of $1,213,409.50. As security for the note, a deed of trust was executed by the debtor, John G. Hamilton, and Barbara M. Hamilton granting First Citizens a first priority lien on certain real property (the "property"). At the time the deed of trust was executed John G. Hamilton ("Hamilton"), together with his wife Barbara, were the owners of the property and the debtor was a tenant of the property under a 32 year ground lease between the debtor and Hamilton. The ground lease, which was recorded

prior to First Citizens' deed of trust, was also pledged as collateral for the loan. In April of 2006, John and Barbara Hamilton were legally separated, and Barbara transferred her interest in the property to John Hamilton.

The promissory note was modified on February 9, 2009, and by its modified terms the note matured on July 1, 2009. On July 15, 2009, First Citizens accelerated the note and made demand on the debtor and guarantors. Foreclosure proceedings were initiated in Brunswick County, and on December 1, 2009, the Clerk of the Superior Court of Brunswick County entered an order allowing a foreclosure sale of the property. First Citizens was the high bidder at the foreclosure sale, with a bid in the amount of $911,100.00, and no upset bids were submitted. By deed recorded on January 8, 2010, Hamilton conveyed the property to the debtor. The debtor filed for bankruptcy protection during the upset bid period, which caused the foreclosure proceedings to become subject to the automatic stay.

## DISCUSSION

Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy petition automatically stays "any act to obtain possession of . . . or to exercise control over property of the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C.A. § 362(a). However, the court may terminate the automatic stay – (1) for cause; (2) if the debtor has no equity in the property and the property is not necessary to an effective reorganization; or (3) in a single asset real estate case, 90 days after filing unless the plan of reorganization "has a reasonable possibility of being confirmed within a reasonable time," or if the debtor "has commenced monthly payments that are in an amount equal to interest . . . on the value of the creditor's interest in the real estate." Id.

§ 362(d)(1)-(3).[1]

      First Citizens asserts that the automatic stay should be lifted "for cause" under § 362(d)(1) based on a showing of bad faith resulting from the transfer of the property the day before the debtor's bankruptcy filing. In support of this argument First Citizens relies on cases holding that the transfer of a distressed property to the debtor "in close proximity" to the bankruptcy filing creates a prima facie showing of bad faith, thus shifting the burden to the debtor to demonstrate why the requested relief should not be granted. See Resolution Trust Corp. v. C & R, L.C., 165 B.R. 593, 595 (W.D. Va. 1994); In re Nelson, 66 B.R. 231, 234 (Bankr. D.N.J. 1986); In re Rye, 54 B.R. 180, 182 (Bankr. D.S.C. 1985); Cal. Mortgage Serv. v. Yukon Entrs., Inc. (In re Yukon Enters. Inc.), 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984). Some of the cited cases involve the so-called "new debtor syndrome," "whereby a new entity is created on the eve of foreclosure for the sole purpose of isolating investors from the insolvent property and its creditors." Resolution Trust, 165 B.R. at 595 (finding that true motivation underlying the transfer was to "delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize . . . ."); see also Yukon, 39 B.R. at 920-21. Other cases cited by First Citizens involve transfers of mortgaged property from the borrower to a close family member, not personally liable for the debt, immediately before the bankruptcy filing. Nelson, 66 B.R. at 232-33; Rye, 54 B.R. at 180-81. First Citizens alleges that the instant case contains all of the "badges of fraud" identified by Yukon, including the transfer of distressed property to a dormant entity, in close proximity to the bankruptcy filing, without

---

[1] Despite the fact that this is a single asset real estate case, § 362(d)(3) is presently inapplicable because 90 days have not passed since the debtor's bankruptcy filing.

consideration, where the debtor has no other assets and no other unsecured debts.  See 39 B.R. at 921.  The debtor denies the existence of these alleged badges of fraud.

Another commonly accepted test for bad faith is "whether any of the substantive or procedural rights of any of the creditors to assets, available prior to the transfer of the property, have been altered or eroded by the transfer and subsequent filing."  Id.  The debtor argues that First Citizens was not harmed in any way by the transfer because, as the holder of a ground lease recorded prior to First Citizens' deed of trust, the debtor had a right to equitable redemption during the ten-day upset bid period that would render the automatic stay applicable to the foreclosure proceedings without the transfer.  Additionally, the debtor asserts that the purpose of the transfer was not to hinder First Citizens from collecting on the debt, but rather to put ownership of the property in the same entity obligated under the note so that the debtor could effectively reorganize and repay the debt.

The bankruptcy court is wary of the potential for bad faith filing when a transfer is structured to isolate an asset in bankruptcy, and the court scrutinizes such transfers carefully. However, in this case the property was transferred to the same entity to whom the bank loaned the money to acquire the land and construct the property.  By putting ownership in the same entity obligated on the note the transfer increased the potential for an effective reorganization. More importantly, the debtor's ground lease predated First Citizens' mortgage and was, in fact, pledged as collateral for the loan such that the foreclosure proceedings implicated a property interest of the debtor even without the transfer.  Unlike the cases relied upon by First Citizens, the "new debtor syndrome" is not at play in this case, nor was the property transferred to an entity without personal liability under the note.  Instead the collateral was transferred to the

maker of the note and the holder of a ground lease pledged as collateral for the note who was also a contractual partner of the bank in every note modification. Furthermore, First Citizens concedes that it incurred no independent injury as a result of the transfer. While the fact that a creditor's rights have not been adversely affected does not alone prove that a filing was made in good faith, the facts and circumstances of this case demonstrate that the debtor filed bankruptcy in an attempt to effectuate an efficient reorganization within the spirit of the Bankruptcy Code. See id. at 921-22. Therefore the court finds that cause does not exist under § 362(d)(1) to grant relief from the automatic stay.

   First Citizens also argues that relief from the automatic stay should be granted under § 362(d)(2) because there is no equity in the property and the property is not necessary for an effective reorganization. At hearing the appraiser commissioned by First Citizens testified that, as of December 12, 2009, the property was worth $1,225,000.00, which is slightly more than the $1,201,311.09 due under the note. However, cross-examination revealed that the appraiser testifying was two persons removed from the appraisal, had virtually no involvement other than reviewing the written report, and otherwise lacked information necessary to establish a credible appraisal. Additionally, First Citizens contends that the property is not necessary for an effective reorganization because the only stream of income available to fund the debtor's plan is rental income from the property. Exhibits entered into evidence by the debtor establish that nearly $100,000.00 is being held in an account from existing reservations for the upcoming rental season, and the debtor testified that another $30,000.00 of income is likely for this year as the property is not fully booked for the upcoming season.

   The court finds that there is equity in the property and that the property is necessary for

an effective reorganization.  Virtually every single asset real estate case is structured such that the debtor owns a single piece of property where rental income provides the stream of payments necessary to fund a plan of reorganization.  Uncontroverted evidence presented at hearing suggests that the property can produce a stream of income sufficient to fund a chapter 11 plan, thus allowing the debtor to effectively reorganize.  As to the equity in the property, the court also holds in the debtor's favor.  The comparable properties used in the appraisal were significantly smaller than the subject property and were much further away in time and space than other properties available for comparison.  While the court recognizes that properties on Bald Head Island and Figure Eight Island are sui generis in the appraisal context, beach front properties on Oak Island and Ocean Island are comparable.  In a market where there are few comparables, failing to include the sale of a slightly smaller beach-front house on Ocean Island that sold for $1,800,000.00 three months before the appraisal casts doubt on the entire appraisal.  The court finds that the value of the property is at least $1,750,000.00, which provides a sufficient equity cushion to protect First Citizens' interest in the collateral while the debtor attempts to confirm a plan of reorganization.

Based on the foregoing, First Citizens' motion for relief from the automatic stay is DENIED.

**"END OF DOCUMENT"**